UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CORLETTA FRANCHELLE DAVIS,

     Plaintiff,

v.                                     Case No: 8:15-cv-2354-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## **ORDER**

Plaintiff, Corletta Franchelle Davis, seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### A.    **Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income in December 2011. (Tr. 164–80.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 120–45.) Plaintiff then requested an administrative hearing. (Tr. 146.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 57–77.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits. (Tr. 27–56.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied.  (Tr. 1–6, 25.)  Plaintiff then timely filed a complaint with this Court.  (Dkt. 1.)  The case

is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.       Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1966, claimed disability beginning on March 15, 2011.  (Tr. 30,

169.)  Plaintiff has a high school education and has past relevant work as a shampooer, hostess,

cashier, short order cook, and medication technician.  (Tr. 48, 49.)  Plaintiff alleged disability due

to chronic back and leg pain, "hbp," and hearing loss in her left ear.  (Tr. 200.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial

gainful activity since March 15, 2011, the alleged onset date.  (Tr. 32.)  After conducting a hearing

and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe

impairments: neoplasm of the brain with a history of craniotomy, degenerative disc disease, lumbar

spinal stenosis, obesity, radiculopathy, sciatica, and adjustment disorder.  (Tr. 32.)

Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing").  (Tr. 33.)  The ALJ then

concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform less than a full range of
> light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift
> and/or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk
> for 6 hours in an 8-hour day; and sit for 2 hours in an 8-hour day. She cannot climb
> ladders or scaffolds, balance or crawl. She can occasionally climb ramps and stairs,
> stoop, kneel and crouch. The claimant can frequently reach above shoulder level
> with both arms, reach waist to chest with both arms, handle with both hands, finger
> with both hands, push and/or pull with the upper extremities, and feel. She cannot
> work around high, exposed places; moving, mechanical parts; or hazards. The
> claimant is able to understand, remember, and carry out simple instructions. She is
> limited to work that requires occasional interaction with the public; however, she
> can frequently interact with supervisors and coworkers. Finally, the claimant uses

a cane on occasion, as needed; however, she is able to ambulate without the assistance of a cane on a frequent basis.

(Tr. 34–35.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. 37.)

The ALJ determined that Plaintiff could not perform past relevant work.  (Tr. 48.)  Given Plaintiff's background and RFC, the vocational expert ("VE") found that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as cleaner (housekeeping), sales attendant, and advertising material distributor.  (Tr. 49, 249–52.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the findings of the VE, the ALJ found Plaintiff not disabled.  (Tr. 50.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.

20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis,

mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in his RFC assessment by (a) not addressing Plaintiff's hand-use limitations due to her use of a cane, and (b) failing to properly analyze Plaintiff's mental limitations; and (2) the ALJ erred in his evaluation of a treating physician's opinions.  For the reasons that follow, these contentions do not warrant reversal.

## A.      Plaintiff's RFC

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The RFC is "the most" a claimant "can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  To determine a claimant's RFC, an ALJ assesses all of the relevant evidence of record, and the ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 404.1545(a)(1), (a)(4).

### 1.      Hand-Use Limitations

As her first issue on appeal, Plaintiff contends that the following portions of the ALJ's RFC finding are deficient: that Plaintiff can stand and walk for six hours out of an eight-hour day, that although Plaintiff uses a cane "on occasion," she "is able to ambulate without the assistance of a cane on a frequent basis," and that Plaintiff is able to frequently reach above shoulder level with both arms, reach waist to chest with both arms, handle and finger with both hands, and push, pull,

and feel with her upper extremities.  (Tr. 34–35.)  Plaintiff argues that the ALJ failed to address Plaintiff's hand and arm-related limitations "for the time that the ALJ himself found that [Plaintiff] would need to use a cane."  (Dkt. 18 at 7–8.)  In response, Defendant argues that substantial evidence supports the ALJ's RFC finding, and that "no reaching or handling limitations are indicated due to Plaintiff's use of a cane because the ALJ determined that Plaintiff could perform a full six hours of walking without the use of an assistive device."  (Dkt. 19 at 12–13.)

As stated above, the ALJ found Plaintiff capable of standing or walking for six hours out of an eight-hour day, and ambulating without the assistance of a cane frequently.  (Tr. 34–35.) Further, the ALJ found Plaintiff capable of frequent use of both arms and hands.  (Tr. 35.)  As Defendant argues (Dkt. 19 at 13), these findings are consistent because "'[f]requent'" means occurring from one-third to two-thirds of the time," and "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).  Thus, the ALJ's finding that Plaintiff is able to walk without use of a cane for approximately six hours is consistent with his finding that Plaintiff is capable of walking or standing for six hours out of an eight-hour day.  Therefore, contrary to Plaintiff's argument, there were no hours for which the ALJ needed to account for Plaintiff's use of her hands while standing and using a cane because the ALJ found Plaintiff capable of standing, walking, and using both hands for the same amount of time in a day as he determined Plaintiff is capable of ambulating without use of a cane.

Nonetheless, the ALJ's findings regarding Plaintiff's use of a cane are supported by substantial evidence.  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (affirming the ALJ's RFC determination as supported by substantial evidence despite claimant's citing other

record evidence to challenge the ALJ's RFC assessment).  Based on the treatment notes and opinions of treating and consultative physicians, the ALJ reasoned that Plaintiff's limitations from her dizziness, namely requiring her to use a cane, were not as limiting as she alleged.  (Tr. 47.) Upon review of the evidence, the ALJ's RFC findings as to Plaintiff's use of a cane and ability to walk are supported by substantial evidence.

First, the ALJ noted that Dr. Lawrence Berk prescribed Plaintiff a cane in November 2012 based on Plaintiff's balance problems stemming from her history of brain tumors.  (Tr. 40, 364.) In March 2013, Dr. Fernando Miranda evaluated Plaintiff's complaints of back pain and found that Plaintiff's gait was "non-altaic," that Plaintiff was able to "heel-and-toe-walk," that Plaintiff's lower extremity strength was normal, and that Plaintiff's balance, gait, and coordination were "intact."  (Tr. 372–77.)  Next, the ALJ cited March 2013 treatment records by a physical therapist, who treated Plaintiff's back pain and related mobility, who noted that Plaintiff was observed to ambulate without an assistive device and without dragging her feet.  (Tr. 41, 385.)  In a follow-up appointment with her physical therapist, in April 2013, Plaintiff performed heel raises, side stepping exercises, leg balance exercises, and abdominal exercises, although her treatment provider noted that she "fatigue[d] easily" with standing activities.  (Tr. 41, 439.)

Finally, the ALJ summarized a medical source statement completed by consultative examining physician Dr. James Melton in November 2013.  (Tr. 43, 540–53.)  In his treatment notes accompanying his medical source statement, Dr. Melton noted that Plaintiff arrived to her examination using a cane.  (Tr. 551.)  However, in his examination notes, Dr. Melton elaborated as follows:

> Examination of gait and station: Normal. (Today, this patient arrives today walking with aid of a cane. She is able to walk about the exam room without the cane. She walks with aid of a cane, but does not limp. She is able to get up and down from the seated position and from the examining table without help.

(Tr. 552.)   Further, in his medical source statement, in response to the question, "does the individual require the use of a cane to ambulate," Dr. Melton answered "no" and stated, "uses cane as needed."  (Tr. 545.)  Also, Dr. Melton noted, in response to a question, that the distance Plaintiff can ambulate without use of a can was "not tested" and that her use of a cane was medically necessary per a prescription.  (Tr. 545.)  As to Plaintiff's use of her hands, Dr. Melton found that Plaintiff can "frequently," meaning one-third to two-thirds of the time, reach (including overhead), handle, finger, feel, push, and pull with her right and left hands.  (Tr. 544, 546.)  Finally, Dr. Melton opined that Plaintiff is capable of shopping, traveling, preparing simple meals, and caring for her personal hygiene without assistance.  (Tr. 47, 549, 574.)

As Defendant argues (Dkt. 19 at 12), additional record evidence supports the ALJ's RFC findings with regard to Plaintiff's use of a cane.  Specifically, in a September 2012 physical medical source treatment questionnaire, Plaintiff's treating physician Dr. Ashok Reddy answered that Plaintiff does not require a cane or other assistive device while engaging in occasional standing and walking.  (Tr. 357.)  And treatment notes in 2012 and 2013 found Plaintiff's gait to be normal.  (Tr. 292, 375–76.)  Therefore, as stated above, the Court concludes that substantial evidence supports the ALJ's RFC finding as to Plaintiff's use of a cane.  Accordingly, Plaintiff's first contention does not warrant reversal.

### 2.    Mental Limitations

Also with regard to the ALJ's RFC finding, Plaintiff argues that the reasoning underlying the ALJ's RFC determination as to Plaintiff's mental impairments is not sufficiently detailed, although Plaintiff does not dispute the RFC determination itself.  (Dkt. 18 at 21.)  Specifically, Plaintiff does not dispute the appropriateness of the ALJ's determination that Plaintiff is able to understand, remember, and carry out simple instructions.  (Dkt. 18 at 21) (emphasis in original)

("To be clear, Plaintiff does not dispute this RFC as far *as it goes*, since the limitation to 'simple' work appears quite sensible.")   Instead, Plaintiff contends that the analysis underlying this determination did not sufficiently analyze the effect of Plaintiff's limitations with concentration, persistence, and pace to meet the heightened standards for evaluating mental impairments.  (Dkt. 18 at 19, 21.)  In response, Defendant argues that the ALJ's RFC finding that Plaintiff is limited to work involving simple instructions properly accounts for Plaintiff's moderate mental limitations and is supported by substantial evidence.  (Dkt. 19 at 13–15.)

Plaintiff is correct that "[a]gency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form] PRTF for evaluating mental impairments." *Moore*, 405 F.3d at 1213; 20 C.F.R. § 404.1520a (effective June 13, 2011).  Utilization of the special technique requires separate evaluations concerning how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Moore*, 405 F.3d at 1213–14; 20 C.F.R. § 404.1520a(c)(3).  "The ALJ is required to incorporate the results of this technique into the findings and conclusions." *Moore*, 405 F.3d at 1213–14; *see* 20 C.F.R. § 404.1520a(e)(4).

The Eleventh Circuit has explained that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Moore*, 405 F.3d at 1214; *Mills v. Comm'r Soc. Sec.*, No. 15-12818, 2016 WL 4361933 *3 (11th Cir. Aug. 16, 2016) (reversing the ALJ's decision because the ALJ failed to analyze one of the areas of functional limitation).  Accordingly, if Plaintiff presented a colorable claim of mental impairment, "the ALJ must either complete the PRTF or explicitly

analyze the four factors within the decision." *Volley v. Astrue*, No. 1:07-CV-0138-AJB, 2008 WL 822192, *19 (N.D. Ga. Mar. 24, 2008).

Here, at step two of the sequential process, the ALJ evaluated whether Plaintiff's mental impairments met the severity of Listing 12.02 (neurocognitive disorders) or Listing 12.04 (depressive, bipolar, and related disorders). (Tr. 33–34.) Specifically, in evaluating whether Plaintiff met Listing 12.02, the ALJ analyzed the limitations listed in 12.02B, which are whether Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation. (Tr. 33.) First, the ALJ found Plaintiff's restrictions on activities of daily living to be "mild," based on Plaintiff's reports of being able to bathe, dress, attend to her personal hygiene, prepare food, complete basic household chores, shop for groceries, pay bills, and manage money independently. (Tr. 33, 535.) Second, with regard to social functioning, the ALJ found Plaintiff to have "moderate difficulties." (Tr. 34.) The ALJ came to this conclusion based on Plaintiff's reports of disliking being around people and loud noises and not socializing regularly, although the ALJ noted that Plaintiff also reported having a support system of friends and family and was found to display adequate social skills, judgment, and social problem solving by a consultative examiner. (Tr. 34, 535–36.) Third, the ALJ found Plaintiff to have "moderate difficulties" with concentration, persistence, or pace, based on Plaintiff's reports of memory difficulties after undergoing brain surgery, but also noted a consultative examiner's findings that Plaintiff demonstrated adequate attention, concentration, mental flexibility, mental processing speed, and memory. (Tr. 34, 535–36.) Fourth, and finally, the ALJ found that the record does not show that Plaintiff experienced any episodes of decompensation. (Tr. 34.)

The ALJ determined that Plaintiff did not meet Listing 12.02, and went on to explain, relevant to Plaintiff's issue on appeal, as follows:

> The limitations identified in the "paragraph B" [of Listing 12.02] criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 34.)  Then, at the fourth step of the sequential process, the ALJ determined, as to Plaintiff's mental impairments, that Plaintiff retained the RFC "to understand, remember, and carry out simple instructions," but "is limited to work that requires occasional interaction with the public; however, she can frequently interact with supervisors and coworkers." (Tr. 35.)  In support of this finding, the ALJ gave great weight to the opinions of Dr. Nicholas Gehle, expressed in Dr. Gehle's November 2013 psychological evaluation of Plaintiff. (Tr. 43–44, 46, 534–39.)  The ALJ analyzed Plaintiff's activities of daily living (explaining that Plaintiff is able to attend to her daily activities independently); social functioning (explaining that although Plaintiff reported some social anxiety, she was not engaged in ongoing mental health treatment), concentration, persistence, or pace (explaining that Dr. Gehle found that Plaintiff demonstrated adequate attention, concentration, mental processing speed, and metal flexibility, and that Plaintiff was "able to attend to questions throughout the interview without distraction and complete tasks of alphabetic and numeric reiteration without errors"); and episodes of decompensation (stating that the record shows that Plaintiff experienced no episodes of decompensation). (Tr. 34, 44, 47–48.)

Therefore, contrary to Plaintiff's argument, the ALJ analyzed the four factors and incorporated these findings in several portions of his decision, and a review of the record shows that substantial evidence supports these findings. *See Moore*, 405 F.3d at 1213–14; *Winschel v.*

*Comm'r Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (holding that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations"). (Tr. 33–34, 43–44, 47–48, 249–52.) Specifically, post-hearing, the ALJ submitted a vocational interrogatory to the VE in which the ALJ whether there are jobs Plaintiff could perform based on Plaintiff's limitations of understanding, remembering, and carrying out simple tasks, and being capable of occasional interaction with the public and frequent interaction with supervisors and coworkers. (Tr. 249–52.) *See Winschel*, 631 F.3d at 1181 (reversing and remanding because "the ALJ should have explicitly included the limitation [caused by claimant's mental impairments] in his hypothetical question to the vocational expert"). And, as Defendant contends (Dkt. 19 at 13–15), Plaintiff has not cited to any record evidence demonstrating that Plaintiff's mental impairments further limit her RFC. Accordingly, Plaintiff's contention does not warrant reversal.

## B.     Weight Accorded to Treating Physician

Finally, Plaintiff argues that the ALJ's reasons for discrediting the opinions of Plaintiff's treating physician, Dr. Reddy, were insufficient and that the medical evidence supports and is consistent with Dr. Reddy's opinions. (Dkt. 18 at 13–18.) Defendant contends, however, that the ALJ properly discredited Dr. Reddy's opinions as inconsistent with and unsupported by the medical evidence and Dr. Reddy's own treatment notes. (Dkt. 19 at 8–12.)

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, ability to perform despite impairments, and physical or mental restrictions. *Winschel*, 631 F.3d at 1178–79 (internal quotation and citation

omitted).  In determining the weight to afford a medical opinion, the ALJ considers the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c); *Hearn v. Comm'r Soc. Sec.*, 619 F. App'x 892, 895 (11th Cir. 2015).  The ALJ must afford the opinion of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Phillips*, 357 F.3d at 1240–41.  Good cause for giving a treating physician's opinion less weight "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.*

Dr. Reddy prepared two physical medical source treatment questionnaires, one in September 2012, and one in October 2013, in which Dr. Reddy "limited [Plaintiff] to less than sedentary work."  (Tr. 44–45, 354–58, 526–30.)  In his decision, the ALJ reviewed Dr. Reddy's two medical source statements, but accorded them little weight.  (Tr. 44–45.)  The ALJ reasoned that (1) "the course of treatment pursued by [Dr. Reddy] has not been consistent with what one would expect which essentially was conservative treatment such as medications and physical therapy," and (2) Dr. Reddy's opinions were inconsistent with his own treatment notes and other medical evidence of record.  (Tr. 44–45.)  Thus, the ALJ concluded, "the objective evidence from other sources, as well as Dr. Reddy's own examinations, do not support his extreme limitation," and, instead, the "*evidence of record as a whole*," supported the ALJ's RFC finding.  (Tr. 45) (emphasis in original.)

The ALJ's considerations that Dr. Reddy's opinions were unsupported by his own treatment records and inconsistent with and not bolstered by the record evidence are the appropriate considerations in according a treating physician's opinions less than substantial weight, *Phillips*, 357 F.3d at 1240–41, and the ALJ's conclusion is supported by substantial evidence. First, as the ALJ identified (Tr. 44), Dr. Reddy treated Plaintiff's symptoms, including pain, with medication (Tr. 271–72, 273–74, 277–78, 289, 290, 291, 342–43, 345–46, 348–49, 351–53, 367, 368, 371, 372–77, 420, 451, 455, 34F, 35F, 43F, and 45F), which is inconsistent with Dr. Reddy's opinions that Plaintiff's pain would frequently interfere with her attention and concentration in a typical workday. (Tr. 355, 527.)

Next, the ALJ noted March 2013 treatment records from Dr. Miranda, a neurologist, in which Dr. Miranda found Plaintiff's gait to be non-antalgic, that Plaintiff was able to "heel-and-toe walk," that Plaintiff's muscle tone in her lower extremity was normal, and that Plaintiff's balance and gait were intact. (Tr. 44, 372–77.) The ALJ next recognized that while Plaintiff underwent a laminectomy, post-surgery, her surgeon found Plaintiff's recovery to be "fair." (Tr. 45, 47, 473.) Finally, the ALJ cited Dr. Melton's November 2013 treatment records accompanying his consultative examination, in which Dr. Melton found Plaintiff's gait to be normal and noted that Plaintiff could walk without a cane, although Dr. Melton noted a decreased range of motion in her cervical and lumbar spine. (Tr. 45, 450–53.) As such, the ALJ's decision is supported by substantial evidence.

To the extent Plaintiff requests that this Court reweigh the evidence underlying the ALJ's decision to accord Dr. Reddy's opinions limited weight (Dkt. 18 at 17), this Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary," but instead must affirm when, as here, the Commissioner's decision is supported by substantial

evidence.  *Bloodsworth*, 703 F.2d at 1239.  Further, Plaintiff does not identify specific physical limitations identified by Dr. Reddy that Plaintiff contends should have been incorporated into the ALJ's RFC findings.  Therefore, for the foregoing reasons, Plaintiff's final contention does not warrant reversal.

**CONCLUSION**

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on January 26, 2017.

_____

JULIE S. SNEED

UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record